**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Janet Poleet, Anna Callis, Patricia Nunn, and Arthur Brobst, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.   12 C 9577 |
| Portfolio Investment Exchange, Inc., a Delaware corporation, PCA Acquisitions V, LLC, a/k/a Portfolio Asset Group, a Delaware limited liability company and Credit Control, LLC, a Missouri limited liability company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | Jury Demanded |

**COMPLAINT**

Plaintiffs, Janet Poleet, Anna Callis, Patricia Nunn and Arthur Brobst, bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), for a finding that Defendants' debt collection actions violated the FDCPA, and to recover damages for Defendants' violations of the FDCPA, and allege:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2.     Venue is proper in this District because: a) many of the acts and transactions occurred here; and, b) Defendants reside and transact business here.

**PARTIES**

3.     Plaintiffs are citizens and residents of numerous states: Janet Poleet ("Poleet") was a citizen of the State of Illinois, but now resides in Arizona; Anna Callis

("Callis") is a citizen of the State of Michigan; Patricia Nunn ("Nunn") is a citizen of the State of Wyoming; and Arthur Brobst ("Brobst"), is a citizen of the State of Pennsylvania. The Defendants attempted to collect delinquent consumers debts from each of the Plaintiffs, despite the fact that they had demanded, as was their right, that collection actions cease, and despite the fact that they were represented by the legal aid attorneys at the Chicago Legal Clinic's Legal Advocates for Seniors and People with Disabilities program ("LASPD"), located in Chicago, Illinois.

4.      Defendant, Portfolio Investment Exchange, Inc. ("PIE"), is a Delaware corporation that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. PIE operates a nationwide delinquent debt collection business, and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant PIE was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debts it attempted to collect from Plaintiffs.

5.      Defendant, PCA Acquisitions V, LLC, a/k/a Portfolio Asset Group ("PCA"), is a Delaware limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. PCA operates a nationwide delinquent debt collection business, and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant Portfolio was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt it attempted to collect from Plaintiffs.

2

6.      Defendant, Credit Control, LLC ("Credit Control"), is a Missouri limited liability company, that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts.  Credit Control operates a nationwide delinquent debt collection business, and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois.  In fact, Defendant Credit Control was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debts it attempted to collect from Plaintiffs.

7.      Defendants PIE and PCA are bad debt buyers, which buy large portfolios of defaulted consumer debts for pennies on the dollar, which they then collect upon through other collection agencies.

8.      Defendants are authorized to conduct business in the State of Illinois and maintain registered agents within the State of Illinois, see, records from the Illinois Secretary of State, attached as Group Exhibit A.  In fact, Defendants each conduct extensive and substantial business in Illinois.

9.      Defendants PIE and Credit Control are each licensed as debt collection agencies in the State of Illinois, see, records from the Illinois Department of Professional Regulation, attached as Group Exhibit B.  In fact, Defendants PIE and Credit Control both act as collection agencies in Illinois.

**COMMON FACTUAL ALLEGATIONS**

10.     Defendant PCA and Defendants PIE and Credit Control knew, or should have known, that the accounts they were selling, buying and collecting upon, were subject to requests to cease collections and cease communications, and were subject

3

to notices of attorney representation.  In fact, Defendants PCA and Credit Control were subject to a prior lawsuit that challenged nearly identical illegal conduct, namely in a case styled Taras v. PCA Acquisitions V, et al., No. 11 C 200 (N.D. Ill.).

11.     Moreover, Defendants knew, or should have known, that there were problems with the debts at issue, due to the many notices they received from LASPD, and other consumers' attorneys, that the debts they were buying, selling and collecting upon were subject to cease collections and cease communications demands and notices of attorney representation.

12.     Furthermore, Defendants knew, or should have known, that there were problems with the debts at issue due to the age of the portfolios of debts at issue.  Any reasonable review of the records on these accounts would have shown that the accounts should not have been sold, bought or collected upon in the manner at issue in this matter.

13.     Defendants' collection actions complained of herein occurred within one year of the date of this Complaint.

14.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard.  See, Gammon v. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

### INDIVIDUAL FACTUAL ALLEGATIONS

**Ms. Janet Poleet**

15.     Ms. Poleet is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed for a Lowes account.  At some point in time after that debt became delinquent, Defendant PCA bought Ms.

4

Poleet's Lowes debt. When Defendant PCA began trying to collect the Lowes debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

16. Specifically, Defendant PCA had its sister company, Phillips & Cohen, demand payment of the Lowes debt from Ms. Poleet, which did so be sending her collection letters, dated June 30, 2009 and August 15, 2009. Copies of these letters are attached at Group Exhibit C at pp. 1-2.

17. Accordingly, on September 1, 2009, one of Ms. Poleet's attorneys at LASPD informed Defendant PCA that Ms. Poleet was represented by counsel, and directed PCA to cease contacting her, and to cease all further collection activities because Ms. Poleet was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached at Group Exhibit D at pp. 1-6.

18. Instead of ceasing collections, however, Defendant PCA then sold the account to Defendant PIE during the Fall of 2011. Defendant PIE and Defendant Credit Control then sent Ms. Poleet a collection letter, dated December 27, 2011, which demanded payment of the debt that was originally owed to Lowes. A copy of this collection letter is attached at Group Exhibit E at p. 1.

19. Accordingly, on February 11, 2012, Ms. Poleet's LASPD attorney sent Defendants PIE and Credit Control a letter, again directing them to cease communications and to cease collections. Copies of this letter and fax confirmation are attached at Group Exhibit F at pp. 1-7.

**Ms. Anna Callis**

20.     Ms. Callis is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed for an HSBC account. At some point in time after that debt became delinquent, Defendant PCA bought Ms. Callis' HSBC debt.  When Defendant PCA began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

21.     Specifically, Defendant PCA had its sister company, Phillips & Cohen, demand payment of the HSBC debt from Ms. Callis, which did so be sending her collection letters, dated July 3, 2009 and August 15, 2009.  Copies of these letters are attached at Group Exhibit C at pp. 3-4.

22.     Accordingly, on September 11, 2009, one of Ms. Callis' attorneys at LASPD informed Defendant PCA that Ms. Callis was represented by counsel, and directed PCA to cease contacting her, and to cease all further collection activities because Ms. Callis was forced, by her financial circumstances, to refuse to pay her unsecured debt.  Copies of this letter and fax confirmation are attached at Group Exhibit D at pp. 7-12.

23.     Instead of ceasing collections, however, Defendant PCA then sold the account to Defendant PIE during the Fall of 2011.  Defendant PIE and Defendant Credit Control then sent Ms. Callis a collection letter, dated December 27, 2011, which demanded payment of the debt that was originally owed to HSBC.  A copy of this collection letter is attached at Group Exhibit E at p. 2.

24.     Accordingly, on February 28, 2012, Ms. Callis' LASPD attorney sent Defendants PIE and Credit Control a letter, again directing them to cease communications and to cease collections.  Copies of this letter and fax confirmation are attached at Group Exhibit F at pp. 8-13.

**Ms. Patricia Nunn**

25.     Ms. Nunn is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she allegedly owed for an HSBC account. At some point in time after that debt became delinquent, Defendant PCA bought Ms. Nunn's HSBC debt.  When Defendant PCA began trying to collect the HSBC debt from her, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

26.     Specifically, Defendant PCA had its sister company, Phillips & Cohen, demand payment of the HSBC debt from Ms. Nunn, which did so be sending her a collection letter, dated August 15, 2009.  A copy of this letter is attached at Group Exhibit C at p. 5.

27.     Accordingly, on August 23, 2009, one of Ms. Nunn's attorneys at LASPD informed Defendant PCA that Ms. Nunn was represented by counsel, and directed PCA to cease contacting her, and to cease all further collection activities because Ms. Nunn was forced, by her financial circumstances, to refuse to pay her unsecured debt. Copies of this letter and fax confirmation are attached at Group Exhibit D at pp. 13-17.

28.     Instead of ceasing collections, however, Defendant PCA then sold the account to Defendant PIE during the Fall of 2011.  Defendant PIE and Defendant Credit Control then sent Ms. Nunn a collection letter, dated December 27, 2011, which

7

demanded payment of the debt that was originally owed to HSBC.  A copy of this collection letter is attached at Group Exhibit E at p. 3.

29.     Accordingly, on March 8, 2012, Ms. Nunn's LASPD attorney sent Defendants PIE and Credit Control a letter, again directing them to cease communications and to cease collections.  Copies of this letter and fax confirmation are attached at Group Exhibit F at pp. 14-19.

**Mr. Arthur Brobst**

30.     Mr. Brobst is a senior citizen, with limited assets and income, who fell behind on paying his bills, including a debt he allegedly owed for an HSBC account.  At some point in time after that debt became delinquent, Defendant PCA bought Mr. Brobst's HSBC debt.  When Defendant PCA began trying to collect the HSBC debt from him, he sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding his financial difficulties and Defendants' collection actions.

31.     Specifically, Defendant PCA had its sister company, Phillips & Cohen, demand payment of the HSBC debt from Mr. Brobst, which did so be sending him a collection letter, dated July 3, 2009.  A copy of this letter is attached at Group Exhibit C at p. 6.

32.     Accordingly, on August 28, 2009, one of Mr. Brobst's attorneys at LASPD informed Defendant PCA that Mr. Brobst was represented by counsel, and directed PCA to cease contacting him, and to cease all further collection activities because Mr. Brobst was forced, by his financial circumstances, to refuse to pay his unsecured debt. Copies of this letter and fax confirmation are attached at Group Exhibit D at pp. 18-23.

33.     Instead of ceasing collections, however, Defendant PCA then sold the

account to Defendant PIE during the Fall of 2011.  Defendant PIE and Defendant Credit Control then sent Mr. Brobst a collection letter, dated December 27, 2011, which demanded payment of the debt that was originally owed to HSBC.  A copy of this collection letter is attached at Group Exhibit E at p. 4.

34.     Accordingly, on February 11, 2012, Mr. Brobst's LASPD attorney sent Defendants PIE and Credit Control a letter, again directing them to cease communications and to cease collections.  Copies of this letter and fax confirmation are attached at Group Exhibit F at pp. 20-25.

**COUNT I**
**Violation Of § 1692c(c) Of The FDCPA --**
**Failure To Cease Communications And Cease Collections**

35.     Plaintiffs adopt and reallege ¶¶ 1-34.

36.     Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay.  See, 15 U.S.C. § 1692c(c).

37.     Here, the letters from Plaintiffs' agent/attorney, LASPD, told Defendants to cease communications and cease collections.  By continuing to communicate regarding this debt and demanding payment, Defendants violated § 1692c(c) of the FDCPA.

38.     Defendants' violations of § 1692c(c) of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. § 1692k.

## COUNT II
### Violation Of § 1692c(a)(2) Of The FDCPA --
### Communicating With A Consumer Represented By Counsel

39.     Plaintiffs adopt and reallege ¶¶ 1-34.

40.     Section 1692c(a)(2) of the FDCPA prohibits a debt collector from

communicating with a consumer if the debt collector knows the consumer is

represented by an attorney with respect to such debt and has knowledge of, or can

readily ascertain, such attorney's name and address.  See, 15 U.S.C. § 1692c(a)(2).

41.     Defendants knew, or readily could have known, that Plaintiffs were

represented by counsel in connection with their debts because their attorneys at LASPD

had informed Defendants, in writing, that Plaintiffs were represented by counsel, and

had directed a cessation of communications with Plaintiffs.  By directly sending

collection letters to Plaintiffs, despite being advised that they were represented by

counsel, Defendants violated § 1692c(a)(2) of the FDCPA.

42.     Defendants' violations of § 1692c(a)(2) of the FDCPA render them liable

for actual and statutory damages, costs, and reasonable attorneys' fees.  See, 15

U.S.C. § 1692k.

## COUNT III
### Violation Of § 1692f Of The FDCPA --
### Unfair Or Unconscionable Collection Actions

43.     Plaintiffs adopt and reallege ¶¶ 1-34.

44.     Section 1692f of the FDCPA prohibits a debt collector from using any

unfair or unconscionable means to collect or attempt to collect a debt.  Defendant PCA,

by selling accounts in which there was a cease collections demand, and Defendants

PIE and Credit Control, by either not finding out if there was a cease collections on

Plaintiffs' accounts or ignoring the fact that there was a cease collections on Plaintiffs' accounts, used unfair or unconscionable actions, in violation of § 1692f of the FDCPA.

45.     Defendants' violations of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

Plaintiffs, Janet Poleet, Anna Callis, Patricia Nunn and Arthur Brobst, pray that this Court:

1.     Find that Defendants' debt collection actions violated the FDCPA;

2.     Enter judgment in favor of all Plaintiffs, and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

3.     Grant such further relief as deemed just.

## JURY DEMAND

All Plaintiffs demand trial by jury.

> Janet Poleet, Anna Callis, Patricia Nunn, and Arthur Brobst,
>
> By: /s/ David J. Philipps_____
> One of Plaintiffs' Attorneys

Dated:  November 30, 2012

David J. Philipps      (Ill. Bar No. 06196285)
Mary E. Philipps       (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angiekrobertson@aol.com